(November 4, 1913.)

## FAIRVIEW INVESTMENT CO., LTD., a Corporation, Respondent, v. JAY G. LAMBERSON et al., Defendants, and WARD LAMBERSON, Appellant.

[136 Pac. 606.]

PLEADINGS—AMENDMENT OF PLEADINGS — TRIAL BY JURY — SUIT TO QUIET TITLE—CORPORATIONS DE FACTO AND DE JURE—AGRICULTURAL CORPORATION—COLLATERAL ATTACK ON CORPORATION.

1.  Complaint examined in this case, and *held* to state sufficient facts to constitute a cause of action for the purpose of determining adverse claims to real property and quieting plaintiff's title thereto.

2.  Where a trial court orders persons who have not been made parties to the action to be brought in and made parties to the action, such order does not amount to an amendment of the pleadings so as to require the service of the amended complaint upon the parties who had already been brought in or appeared in the case and who were parties to the action.

3.  An action to determine adverse claims to real property and quiet title thereto is a suit in equity, and the parties are not entitled to a jury as a matter of right. In such a case, it is a matter addressed to the discretion of the trial court as to whether he will submit any question of fact to the jury for their finding thereon.

4.  Where a sheriff conducted a foreclosure sale in 1875 under the statutes of the territory as they then existed, and instead of giving the purchaser a certificate of sale gave him a sheriff's deed, and it appears that there was no attempt ever made to redeem the property and no offer was ever made to redeem, and that neither the owner of the property nor his successors were in any way prevented or precluded from exercising their right of redemption by reason or on account of the sheriff having given a deed instead of a certificate of sale, and the parties take no proceeding for more than thirty-five years thereafter, *held,* that no one has been prejudiced by reason of the giving of the deed instead of the certificate of sale, and that it is now too late for the original owner or his successor to complain of the error and mistake.

5.  Where incorporators have attempted to form a corporation and the company has thereafter proceeded on the·theory that it was duly and regularly incorporated and exercised the rights and powers of a corporation and acquired property ·and transacted business, even though it has failed to comply with the law in some

particular in the matter of its incorporation, still these acts constitute it a *de facto* corporation, and it will be so treated in considering its subsequent business transactions.

6. Where the statute authorizes the formation of corporations for "agricultural purposes," a corporation, formed for the purposes of making agricultural exhibits and exhibiting horses and cattle and livestock and giving exhibitions of the speed of horses, will be held to come within the purview of the law and be for "agricultural purposes."

7. As to whether the question of the right of a corporation to exercise powers outside of and in excess of the powers conferred by the statute authorizing its organization may be raised in a collateral way by a private litigant, *quaere.*

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Carl A. Davis, Judge.

Judgment for plaintiff, and one of the defendants appeals. *Affirmed.*

A. C. Vaughan, for Appellant.

Where the complaint starts to set up title and fails in any part of the chain of title, the complainant will be bound by what is plead.   The allegation that the plaintiff is the owner in fee simple and entitled to the possession of the land as described in the complaint is treated as a conclusion of law. (Sutherland, Pleading & Practice, sec. 6205; *Turner v. White,* 73 Cal. 299, 14 Pac. 794; *Gruwell v. Seybolt,* 82 Cal. 7, 22 Pac. 938.)

We contend that when the court sustained a general demurrer to the complaint that no complaint existed originally, and that the complaint could not be amended so as to state a cause of action, that it was a new cause of action, if any, and that service of the same must be made upon the defendant personally.   (*Vermont Loan & Trust Co. v. McGregor,* 5 Ida. 510, 51 Pac. 104; *Wooddy v. Jamieson,* 4 Ida. 448, 40 Pac. 61.)

The defendant demanded a jury trial, because the questions of title and possession were in issue.   It is a constitutional right that the defendant has, when adverse possession is set

up in the pleading, and the complaint is based upon adverse possession, and the title through which the plaintiff claims title is adverse possession. (32 Cyc. 1374, 1375; *Midgett v. Midgett,* 129 N. C. 21, 39 S. E. 722.)

Questions as to the legal title to land are of right triable by jury, and this right cannot be abrogated by statute. (24 Cyc. 109; *Newman v. Duane,* 89 Cal. 597, 27 Pac. 66; *Smith v. Moberly,* 15 B. Mon. (Ky.) 70; *Blackman v. Wheaton,* 13 Minn. 326; *Glenn v. Lancaster,* 109 N. Y. 641, 16 N. E. 484; *King v. Van Vleck,* 109 N. Y. 363, 16 N. E. 547; *Meigs v. Willis,* 66 How. Pr. 466; and numerous cases cited in 24 Cyc. 109.)

"The facts to establish adverse possession are to be found by the jury, but what constitutes adverse possession is a question of law." (1 Sutherland, Code Pleading & Practice, sec. 1126; *Macklot v. Dubreuil,* 9 Mo. 477, 43 Am. Dec. 550; *Bowie v. Brahe,* 3 Duer (N. Y.), 35; *Jackson v. Walker,* 7 Cow. (N. Y.) 637; *Munroe v. Merchant,* 26 Barb. 383; *Park v. Wilkinson,* 21 Utah, 279, 60 Pac. 945; *Donahue v. Meister,* 88 Cal. 121, 22 Am. St. 283, 25 Pac. 1097; *Norris' Appeal,* 64 Pa. 281; *Haines' Appeal,* 73 Pa. 169.)

"In a proceeding under the statute to quiet title a jury may be demanded as of right, the action being statutory." (*Trittipo v. Morgan,* 99 Ind. 269; *Johnson v. Taylor,* 106 Ind. 89, 5 N. E. 732.)

"The burden is on plaintiff to establish that it has a perfect legal or equitable title without reference to and regardless of whether the defendant's title be valid or invalid." (32 Cyc. 69; *Keller v. McGilliard,* 5 Cal. App. 395, 90 Pac. 483; *Shelton Logging Co. v. Gosser,* 26 Wash. 126, 66 Pac. 151; 41 Cent. Dig., tit. "Quieting Title," sec. 89.)

There is no proof whatever that had there been a law by which said company could have been incorporated that they ever complied substantially with the statute in force. (*Martin v. Deetz,* 102 Cal. 55, 41 Am. St. 151, 36 Pac. 368; *People v. Volcano Canyon etc. Co.,* 100 Cal. 87, 34 Pac. 522.)

The articles themselves are the sole criterion to ascertain the purpose for which it was formed, and the intent must be

gathered alone from the written instrument and cannot be aided or varied or contradicted by testimony or averments *aliunde* the instrument itself. (*Attorney General v. Lorman,* 59 Mich. 157, 60 Am. Rep. 287, 26 N. W. 311; *Detroit Driving Club v. Fitzgerald,* 109 Mich. 670, 67 N. W. 899; *Distilling etc. Co. v. People,* 161 Ill. 101, 43 N. E. 779; *Evanston Electrical etc. Co. v. Kochersperger,* 175 Ill. 26, 51 N. E. 719; *State v. Minnesota etc. Co.,* 40 Minn. 213, 41 N. W. 1020, 3 L. R. A. 510; *State v. International Inv. Co.,* 88 Wis. 512, 43 Am. St. 920, 60 N. W. 796.)

The purposes of a corporation which are inadequately declared in its articles of association cannot be aided and cured by the by-laws. (Thompson on Corporations, sec. 41; *Indiana Bond Co. v. Ogle,* 22 Ind. App. 593, 72 Am. St. 326, 54 N. E. 407; 1 Cook, Corp., sec. 4; Thompson, Corp., 2d ed., sec. 44; *Market St. Ry. Co. v. Hellman,* 109 Cal. 571, 42 Pac. 225.)

Three things are necessary to constitute a corporation *de facto:* First, a law under which a corporation of the powers assumed must lawfully be incorporated; second, a tolerable compliance with the laws requiring it; third, a user of the rights claimed under the law. (Thompson on Corp., par. 224; 10 Cyc. 253.)

It is essential to the validity of a conveyance that there should be a grantee; therefore a deed to a supposed corporation which has not been duly incorporated and which subsequently had no legal existence is a nullity at law and does not divest the grantor of title. (10 Cyc. 1021; *Harriman v. Southam,* 16 Ind. 190; *Douthitt v. Stinson,* 63 Mo. 268; *German Land Assn. v. Scholler,* 10 Minn. 331; *Russell v. Topping,* 5 McLean, 194, 21 Fed. Cas. No. 12,163.)

"The owner of the mortgaged premises, where no power of sale is embraced in the mortgage, cannot under any circumstances be cut off from his estate except by sale in pursuance of a degree of the court." (*Goodenow v. Ewer,* 16 Cal. 461, 76 Am. Dec. 540; *Phillips v. Hagart,* 113 Cal. 552, 54 Am. St. 369, 45 Pac. 843; *Boggs v. Fowler & Hargrave,* 16 Cal. 566, 76 Am. Dec. 561.)

Title never passed from the Lambersons to Huntoon or to the Idaho Agricultural Park Association, and plaintiff is estopped from asserting any interest or adverse possession by reason of any deed prior to 1908, according to the testimony. (2 Devlin on Deeds, 3d ed., sec. 850–C.)

Hawley, Puckett & Hawley, Wyman & Wyman and B. F. Neal, for Respondent.

The court did not err in entering default against certain defendants for failure to answer or otherwise plead to the amended complaint, "for the reason that no service of the amended complaint had been made upon them." (*Bates v. Carpentier,* 98 Fed. 452, 454; *Cooper v. Preston,* 105 Fed. 403, 404; *Carothers v. McKinley etc. Co.,* 116 Fed. 947, 951; *Carothers v. McKinley etc. Co.,* 122 Fed. 305, 307; *Manufacturers Co. v. Brown Alaska Co.,* 148 Fed. 309.)

"Unless the exercise of the court's discretion in the amendment of pleadings deprives a party of some substantial right, there is no error." (*Havelick v. Davidson,* 15 Ida. 787, 100 Pac. 91; *Harrison v. Russell & Co.,* 17 Ida. 196, 105 Pac. 48.)

If plaintiff had any right of action, it was in equity to restrain defendants from asserting any adverse claim, thus quieting its own title. (15 Cyc. 53; 10 Am. & Eng. Ency. Law, 524; 7 Ency. Pl. & Pr. 301.)

It is no longer required that the plaintiff be in possession or that the specific cloud sought to be removed be set forth in the complaint, or that it have any apparent validity. General averments, such as contained in plaintiff's complaint, are sufficient. (*Hesser v. Miller,* 77 Cal. 192, 19 Pac. 375; *Turner v. White,* 73 Cal. 299, 14 Pac. 794; *Gray v. Walker,* 157 Cal. 381, 108 Pac. 278; *Riverside Land & Irr. Co. v. Jensen,* 108 Cal. 146, 41 Pac. 40.)

The complaint alleges in substance that plaintiff is the owner of and entitled to the possession of the premises. It was therefore an action in equity, and neither party was entitled to a jury. (*Shields v. Johnson,* 10 Ida. 476, 79 Pac. 391, 3 Ann. Cas. 245; *Butts v. Butts,* 84 Kan. 475, 114 Pac.

1048; *Bradley v. Burkhart,* 139 Iowa, 323, 130 Am. St. 328, 115 N. W. 597; *Grigsby v. Larson,* 24 S. D. 628, 124 N. W. 856; *Montana O. P. Co. v. Boston M. C. C. & S. M. Co.,* 27 Mont. 288, 70 Pac. 1114, 22 Morr. Min. Rep. 471; *Stockton v. Oregon S. L. R. Co.,* 170 Fed. 627; *Holland v. Challen,* 110 U. S. 15, 3 Sup. Ct. 495, 28 L. ed. 52; *Johnson v. Peterson,* 90 Minn. 503, 97 N. W. 384; *Roussain v. Patten,* 46 Minn. 308, 48 N. W. 1122; *Larkin v. Wilson,* 28 Kan. 513; *Hickey v. Anaconda M. Co.,* 33 Mont. 46, 81 Pac. 806.)

The facts here justify the same conclusion as to laches and limitations that was reached by this court in *Coe v. Sloan,* 16 Ida. 49, 100 Pac. 354.

The evidence all tends to show that agriculture, fruit-raising and the general industry of farming was encouraged and intended to be encouraged by the organization and carrying on of this Fair Association. The words "agricultural purposes" make a very broad authorization. (*Binzel v. Grogan,* 67 Wis. 147, 29 N. W. 895; *Dillard v. Webb,* 55 Ala. 468; *Downing v. Indiana State Board of Agriculture,* 129 Ind. 443, 28 N. E. 123, 614, 12 L. R. A. 664; *Dunn v. Brown etc. Agricultural Soc.,* 46 Ohio St. 93, 15 Am. St. 556, 18 N. E. 496, 1 L. R. A. 754.)

"Slight evidence is generally held sufficient to establish the user necessary to show the existence of a *de facto* corporation. In some jurisdictions it is only necessary to show that the corporation assumed to act as such." (10 Cyc. 239; *Hecht v. Acme Coal Co.,* 19 Wyo. 10, 113 Pac. 786.)

No collateral attack can be made upon a corporation, either in its user or nonuser of rights, or in any other matter connected with its existence or organization, if it has been shown to be a corporation *de facto.* (Thompson on Corporations, pars. 248, 3241.)

A *de facto* corporation has the full powers of a *de jure* corporation. (*Boise City Canal Co. v. Pinkham,* 1 Ida. 790.)

Declarations of the grantor made long prior to his deed and inconsistent therewith are not admissible for the purpose of impeaching such deed. (*Kelly v. Perrault,* 5 Ida. 221, 48 Pac. 45; *Turner v. Gumbert,* 19 Ida. 339, 114 Pac. 33;

*Josslyn v. Daly,* 15 Ida. 137, 96 Pac. 568; *Whitney v. Dewey,* 10 Ida. 638, 80 Pac. 1117, 69 L. R. A. 572; 20 Cent. Dig., par. 846.)

It is highly improbable that such a deed as claimed by defendants was ever issued, and the proof to establish its execution and its loss must be clear and convincing. (*Dasher v. Ellis,* 102 Ga. 830, 30 S. E. 544; *Fries v. Griffin,* 35 Fla. 212, 17 So. 66; *Garland v. Foster etc. State Bank,* 11 N. D. 374, 92 N. W. 452; *McManus v. Commow,* 10 N. D. 340, 87 N. W. 8; *Day v. Philbrook,* 85 Me. 90, 26 Atl. 999.)

"A motion will be sustained to strike from the record on appeal from a judgment any papers or records which have no place in the judgment-roll under the statute." (*Williams v. Boise Basin & Dev. Co.,* 11 Ida. 233, 81 Pac. 646; *Swanson v. Groat,* 12 Ida. 148, 85 Pac. 384.)

The doctrine of the Williams case was also approved in *Crowley v. Croesus Gold & Copper Min. Co.,* 12 Ida. 530, 539, 86 Pac. 539, and *Bissing v. Bissing,* 19 Ida. 777, 778, 115 Pac. 827.

AILSHIE, C. J.—This action was instituted for the purpose of quieting plaintiff's title to the tract of land described in the complaint. Judgment was entered in favor of the plaintiff and one of the defendants appeals. The lands involved in this action are contiguous and form an addition to Boise City.

It appears that on the 10th day of February, 1870, patent issued from the United States to Nicholas Lamberson for 120 acres of land, and that the tract of land involved in this action is a part of that tract. Nicholas Lamberson and wife had the following children: Jay G. Lamberson, Charles G. Lamberson, Elbert S. Lamberson, Lelia L. Smith Lamberson, and Julia J. Coyle Lamberson, who constituted the heirs at law of Nicholas and Sarah Lamberson. In April and June, 1869, Nicholas Lamberson mortgaged the land to David N. Hyde to secure the payment of $555.16. In October, 1869, Hyde commenced an action in the district court in and for Ada county for the foreclosure of the mortgage executed in

April of that year, and decree of foreclosure was entered, and the case was subsequently appealed to the supreme court. (See *Hyde v. Lamberson,* 1 Ida. 539.) Following the decision of the supreme court, such proceedings were had in the trial court that on the 20th of March, 1875, a final decree of foreclosure was granted, and the order of sale theretofore issued was ordered corrected and sheriff's sale was had on April 26, 1875, and sheriff's deed was issued to John Huntoon as purchaser for the sum of $1,500. On April 30, 1875, defendant Lamberson filed a notice of intention to move for a new trial, and on the June following filed a statement asking for a new trial, and on September 11th a stipulation was filed to dismiss the action. On August 27, 1875, the Lambersons executed and delivered to John Huntoon, a quitclaim deed to the property which had been covered by the mortgage and the foreclosure sale. In August, 1875, there was organized, either as a *de jure* or a *de facto* corporation, what is known as the Idaho Agricultural Park Association, and about the 21st of September, 1875, John Huntoon and wife conveyed the property to the Idaho Agricultural Park Association. This corporation held, occupied and used the property from 1875 until August, 1902, when it conveyed the same to the respondent corporation. On the 29th day of August, 1907, the Fairview Investment Co., respondent, produced a quitclaim deed to the entire tract of land here in dispute from the surviving widow of Nicholas Lamberson, and on the 25th day of March, 1908, procured a further deed of conveyance particularly describing the land and setting out various transactions previously had in reference to the title.

1. It is first contended that the complaint in the action does not contain facts sufficient to constitute a cause of action. This was clearly an action prosecuted under the provisions of sec. 4538, Rev. Codes, for the purpose of determining adverse claims to the property and quieting the plaintiff's title thereto. The objections raised by appellant to the procedure herein in the matter of service of process and amendment of pleadings are not well taken. The court did not err or abuse its discretion in its rulings on these matters.

2. The objection that the court erred in ordering the Huntoons and all unknown heirs and devisees to be brought in is without merit. The mere fact that a court orders additional parties brought into an action does not of itself work an amendment of the pleadings so as to require new service of the pleadings in the case.

3. The court did not err in refusing to submit this case to a jury. It was an equity case, and the court properly so treated it. It is true in this case, as it is in most all equity cases, that there are some questions of fact which a court may properly and sometimes wisely submit to a jury. That is a question, however, addressed to the discretion of the trial court. (*Shields v. Johnson,* 10 Ida. 476, 79 Pac. 391, 3 Ann. Cas. 245.)

4. One of the points most seriously urged is the alleged lack of corporate existence of the Idaho Agricultural Park Association through which the respondent traces its chain of title. To our minds, many reasons occur why this contention is wholly without merit. In the first place, the Lambersons had parted with all their title. First, they had lost title through the foreclosure of the mortgage given in 1869; and, second, through the quitclaim deed executed in favor of Huntoon in 1875. While the sheriff should have given a certificate of sale instead of a deed, it is now too late, after the lapse of more than thirty years, for the mortgagors to raise that question, when they never offered to redeem or attempted to redeem within the time prescribed by the statute as it was then in force or as it has existed at any time since. Where a sheriff gives a deed instead of a certificate of sale, the deed will have no other effect than that of a certificate of sale for such time at least as the right of redemption would exist. After the lapse of thirty-odd years and no offer having been made in the meanwhile to redeem, it can certainly make no difference to the mortgagor whether the sheriff executed a deed or a mere certificate of sale. If, however, he did show that he has lost any right or been deprived of the right of redemption by reason of this deed, then a different question would arise. In the second place, the quitclaim deed from the

Lambersons to Huntoon passed all the title the makers of the deed had at that time.   (Sec. 44, p. 603, Rev. Laws of 1874; *Myers v. City of Oceanside,* 7 Cal. App. 87, 93 Pac. 636; 13 Cyc. 652.   See *Whitney v. Dewey,* 10 Ida. 633, 80 Pac. 1117, 69 L. R. A. 572.)   Whether the Idaho Agricultural Park Association was regularly incorporated in accordance with law or not, it certainly became a *de facto* corporation (*Continental Trust Co. v. Toledo etc. Co.,* 82 Fed. 642), and for the purposes of this case it would be treated the same as a *de jure* corporation.

The contention that has been so urgently made that this corporation could not be formed for the purposes designated in its articles under sec. 1 of the act of the legislature of 1874, authorizing the formation of corporations, is not well taken. (See p. 618 of the Statutes of 1874–75.)   It appears that a corporation was formed for the following purposes: ''The company is formed for the purpose of owning ground, erecting buildings and improvements thereon, making a driving track and holding and conducting agricultural exhibitions, fairs, horse and cattle shows, and trials of speed of horses.'' The statute, on the other hand, authorized the formation of corporations for ''agricultural purposes.''   A fair, conducted for making agricultural exhibits, the exhibiting of horses and cattle and giving exhibitions of the speed of horses has been frequently and quite generally recognized as a proper exercise of the powers of an organization and corporation formed for ''agricultural purposes.''   (See *Dillard v. Webb,* 55 Ala. 468; *Downing v. Indiana State Board of Agriculture,* 129 Ind. 443, 28 N. E. 123, 614, 12 L. R. A. 664; *Dunn v. Society,* 46 Ohio St. 93, 15 Am. St. 556, 18 N. E. 496.)

Still another objection as to appellant's contention has suggested itself to our minds, and that is, if this corporation undertook to exercise powers outside of, or in excess of, the powers conferred by statute or contemplated by its charter, the appellant here would not be in a position, in a collateral way, to question its existence or authority to act or exercise such powers.   That would have been a proper question for the

state to raise. (See *Seymour Opera House Co. v. Wooldridge* (Tex. Civ. App.), 31 S. W. 234.)

We do not deem it necessary to further review or consider the other points raised by appellant in this connection.

There is only one other point that has been raised that we will give special attention. It is contended by appellants that Nicholas Lamberson and wife, subsequent to executing the mortgages in 1869 and prior to the execution of the quit-claim deed to Huntoon in 1875, executed a warranty deed in favor of the children of Nicholas Lamberson by a former wife, in which deed they reserved to the grantors a life estate. It is contended that this deed was executed in 1873 and that the children who were named as grantees resided in Wisconsin, and that the acknowledgment to this deed was taken before Jeremiah Brumback and left with him to be recorded. No such deed, however, was produced, and no such deed appears of record. Other parol evidence was introduced to the effect that this deed was witnessed by Thomas Cahalan, and that about the year 1882 it was in the possession of Milton Kelly, at one time a justice of this court. Cahalan was not called and did not testify. But little of the evidence on this question was either competent or admissible, and it was all of an uncertain and doubtful character. The execution and delivery of this deed was not satisfactorily shown, and the trial court did not believe that such a deed had been executed and made his findings accordingly.

The motion made in the trial court to strike the cost bill from the files and the ruling of the court thereon are not properly in the record and cannot therefore be considered on appeal. (Sec. 4456, Rev. Codes, as amended 1909 Sess. Laws, 76; *Williams v. Boise Basin Mining Co.*, 11 Ida. 233, 81 Pac. 646; *Swanson v. Groat*, 12 Ida. 148, 85 Pac. 384; *Bissing v. Bissing*, 19 Ida. 777, 115 Pac. 827.)

Many other questions have been argued, but we shall not deal with them separately in this opinion. No error has been presented which requires or would justify the reversal of the judgment in this case. Upon a view of the whole record, we

are satisfied that the judgment of the trial court is just and equitable and that it should be affirmed, and it is so ordered. Costs awarded in favor of respondents.

Sullivan and Stewart, JJ., concur.